1  LOEB & LOEB LLP
   BERNARD R. GIVEN II (SBN 134718)
2  bgiven@loeb.com
   10100 Santa Monica Blvd.
3  Suite 2200
   Los Angeles, CA  90067
4  Telephone:  310.282.2000
   Facsimile:   310.282.2200
5
   (Proposed) Attorneys for Debtor
6  COOL FREAKIN' GENIUS LLC

# UNITED STATES BANKRUPTCY COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:26-bk-11023-BB |
| COOL FREAKIN' GENIUS LLC, | Chapter 11, Subchapter V |
| Debtor. | Judge:  Hon. Sheri Bluebond |
| Tax id. 45-4473052 | **DECLARATION OF KYARA MASCOLO, MANAGER OF COOL FREAKIN' GENIUS LLC, IN SUPPORT OF CHAPTER 11 SUBCHAPTER V PETITION AND FIRST DAY MOTIONS** |

Kyara Mascolo, being duly sworn, declares and states, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Manager of Cool Freakin' Genius LLC ("**CFG**" or the "**Debtor**"), the above-captioned debtor and debtor in possession. Based in Los Angeles, the Debtor is a California Limited Liability Corporation.

2. I have been the Debtor's Manager since it was formed.

3. As the Manager of CFG, I am the Debtor's officer with primary responsibility for managing the Debtor's business and financial affairs and I am familiar with, and responsible for, the Debtor's day-to-day operations.

242916812.3
237253-10003
Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

DECLARATION OF KYARA MASCOLO

4. I am also familiar with the Debtor's books and records, which I personally know are made and maintained in the ordinary course of business.

5. I submit this declaration (the "**Declaration**") in accordance with the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California (the "**Local Rules**") and in connection with the Debtor's voluntary petition (the "**Petition**") for relief under subchapter V of title 11 of the United States Code (the "**Bankruptcy Code**") filed in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**") (the "**Subchapter V Case**") on February 3, 2026 (the "**Petition Date**").

6. I make this Declaration in support of the Debtor's Petition and to provide the Court and all parties in interest with an overview of the Debtor, its business and the events precipitating the commencement of the Debtor's Subchapter V Case. This Declaration also supports the Debtor's First Day Motions (later defined).

7. Except as otherwise indicated herein, the facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents, information provided to me by the Debtor's employees or professionals, or my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and the industry in which it operates. I am authorized to submit this Declaration on the Debtor's behalf. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

8. On the Petition Date, I caused the Debtor to file a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtor commenced this Subchapter V Case to effectuate a restructuring of its debt, capital structure and operations under Subchapter V of Chapter 11 of the Bankruptcy Code.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

242916812.3
237253-10003

- 2 -

DECLARATION OF KYARA MASCOLO

9. The Debtor qualifies as a "debtor" within the meaning of Bankruptcy Code § 1181(1). The Debtor continues to operate its business and manage its assets as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

10. There is no other or prior bankruptcy case filed by or against the Debtor. To the best of my knowledge, no committee of unsecured creditors has been organized prior to the entry of the order for relief in the Debtor's Subchapter V Case.

11. A copy of the resolution authorizing the Debtor to file this Subchapter V Case was attached to the Petition and incorporated by reference herein. Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

## IV. History and Background

12. I have over 30 years of experience in the professional beauty industry, specializing in cosmetics and haircare. My expertise encompasses product formulation, branding, packaging, launch strategy, and distribution partnerships, giving me deep insight into how salons and stylists select and recommend products. My husband, Bruno Mascolo, and his brothers founded TONI & GUY salons and launched the TIGI haircare brand in 1985. In 1988, Bruno hired me to create a makeup line for the salons, which featured brightly colored packaging reflecting both my aesthetic preferences and 1980s fashion trends. In 1990, I began redesigning TIGI's haircare packaging, introducing vibrant colors that quickly boosted sales.

13. In 1996, I developed the BED HEAD WAX STICK with distinctive packaging and branding, which became highly successful and led to the creation of the BED HEAD haircare line. The BED HEAD trademark was transferred to Toni & Guy (USA) Limited in 2000, the predecessor to TIGI Linea Corp. ("TIGI Corp."). By 2003, I served as Senior Vice President of Marketing at TIGI Corp., overseeing product development, marketing, public relations, and promotions for several brands. We marketed BED HEAD using cosmetics industry techniques, celebrity endorsements, and

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

242916812.3
237253-10003

- 3 -

DECLARATION OF KYARA MASCOLO

product placement at major events, resulting in exponential sales growth. TIGI Corp. was sold to Unilever Plc. in 2009, and my husband and I became subject to a ten-year non-compete agreement.

14. In 2015, I founded the Debtor and began selling cosmetics under the brand name **freakin' genius**. From the outset, my plan was to build a brand that would sell not only cosmetics, but also, once my non-compete restriction expired, a broad range of haircare products. Our goal was to produce high-quality, meticulously formulated products using premium ingredients that cater exclusively to mid- and high-end professional salons — not mass-market retail. Professional salons are the side of the business that I knew from working with the Mascolo brothers, and where I had my business contacts.

15. The timeline for bringing haircare products to market was significantly delayed due to various factors outside my control, including a family tragedy in 2020, the COVID-19 pandemic, and other intervening circumstances. As a result, it was not until 2023 that we began to earnestly develop the haircare line, along with its formulations, naming, and packaging.

16. CFG's aim is to target professional salons and stylists exclusively. We do not sell through drugstores, big-box retailers, grocery chains, or other mass-market consumer channels. Our pricing, branding, and product performance are designed specifically for the professional salon environment. Accordingly, to introduce **freakin' genius** to the professional marketplace, we announced our launch at the 2025 CosmoProf trade show in Las Vegas, Nevada, which is the leading business-to-business beauty trade show in North America. We also exhibited in October at the Masello show, which is another trade show for the professional salon industry.

17. We currently sell **freakin' genius** products in 56 salons, most of which are on the East Coast and West Coast.

242916812.3
237253-10003
- 4 -
Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations
DECLARATION OF KYARA MASCOLO

## V. Circumstances Leading the Debtor to File the Subchapter V Case

18. In November 2025, TIGI Corp., TIGI Holdings Ltd., and Elida Beauty US (IP) LLC (collectively, the "**TIGI Group**") filed a complaint against the Debtor in the United States District Court for the Central District of California (the "**District Court**"), commencing Case No. 2:25-cv-10761-ODW-AS (the "**TIGI Case**"). TIGI Group asserted that the Debtor had engaged in trademark infringement relating to the trade dress of certain brands owned by TIGI Group, including BED HEAD, and had also engaged in unfair competition and false advertising. TIGI Group also filed a motion seeking a preliminary injunction that would prohibit the Debtor from using its current packaging and design for its products. While the Debtor aggressively opposed the issuance of a preliminary injunction, the District Court granted TIGI Group's motion on January 12, 2026 and issued a preliminary injunction prohibiting the Debtor from using its current packaging or any packaging similar to the trade dress of certain TIGI Group products.

19. Subsequent to the entry of the preliminary injunction, the Debtor made several attempts to reach a resolution with the TIGI Group, by offering different designs, which I believe do not infringe upon the existing products sold by TIGI Group. TIGI Group has repeatedly refused the designs and seeks to move forward with the trade dress infringement suit. Based upon the profit generated from the products that the Court believed the Debtor might be infringing, TIGI Group's damages would not exceed $75,000. However, the TIGI Group also seeks to have the Debtor pay over $500,000 in legal fees allegedly incurred in connection with the TIGI Case. The Debtor believes these fees are unreasonable and, in any event, does not have sufficient cash flow to pay such substantial fees. Accordingly, since the Debtor has been unable to negotiate a satisfactory resolution with TIGI Group and is currently unable to sell any of its **freakin' genius** products, the Debtor has been left with no alternative but to file this Subchapter V Case.

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

## VI. The Debtor's Business, Assets and Liabilities

20. The Debtor is a limited liability company organized under the laws of the State of California and owned 50% by the Kyara Mascolo 2015 Delaware Grantor Trust and 50% by the Bruno Mascolo 2015 Delaware Grantor Trust.

21. The Debtor's assets will be listed more fully on the Schedules of Assets and Liabilities, but generally include unsold inventory, **freakin' genius** product formulations, and trademarks for the **freakin' genius** brand.

22. The Debtor has no secured debt, but does have an outstanding unsecured loan from a related party totaling $1,200,000. The Debtor's remaining debt relates to the TIGI Case, to the extent the TIGI Group ultimately prevails, and certain limited trade debt.

23. In the ordinary course of its business and not specifically in connection with this Subchapter V Case, the Debtor employs the accounting firm of ProBizKeepers, Certified Public Accountants, located at 10736 Jefferson Blvd., Suite 450, Culver City, CA 90230. The majority of the Debtor's books and records are maintained by ProBizKeepers.

24. The Debtor leases virtual office space and also contracts with a warehouse to store its unsold inventory. The Debtor does not have any property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity.

25. As of the Petition Date, and discussed in more detail below, the Debtor has five employees.

26. As of the Petition Date, the Debtor maintains property and general liability insurance through Evanston Insurance Co. and auto insurance through State Farm.

27. As of the Petition Date, the Debtor maintained one bank account at Bank of America ending in 4579 (the "**Bank Account**").

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

242916812.3
237253-10003

- 6 -

DECLARATION OF KYARA MASCOLO

## VII. First Day Motions

28. To enable the Debtor to operate effectively and to minimize the potential adverse effects of the Subchapter V Case, the Debtor has requested certain immediate relief in a series of motions and applications (collectively, the "**First Day Motions**"), which are being filed concurrently with this Declaration.

29. The First Day Motions, each of which is summarized below, seek, among other things: (i) to authorize, but not require, the Debtor to pay prepetition wages and employee benefits and to authorizing the Debtor's bank to honor checks with respect thereto, and authorizing, but not requiring the Debtor to pay post-petition wages (the "**Employee Wage Motion**"); (ii) to authorize the Debtor to continue using its existing cash management system, including maintaining its existing bank account (the "**Cash Management Motion**"); and (iii) to authorize the Debtor to retain Loeb & Loeb LLP ("**Loeb**") as its general bankruptcy counsel, during the pendency of the Debtor's Subchapter V Case (the "**Retention Motion**").

30. The relief requested by the Debtor in the First Day Motions is critical to the Debtor's efforts to maximize value for the benefit of its creditors and is intended to minimize the potential adverse effects that commencement of the Subchapter V Case may have on the Debtor and its business operations.

31. I believe that the relief requested in each First Day Motion is: (a) necessary to preserve and maximize the value of the Debtor's estate; (b) essential to the successful reorganization of the Debtor; and (c) serves the best interest of the Debtor, its estate, its creditors and other parties in interest.

### A. Employee Wage Motion

32. As of the Petition Date, the Debtor employs five non-insider employees and one "contracted" employee (the "**Employees**") in the ordinary course of business. The Debtor's employees are all at "at will" and do not have contractual arrangements that would require them to continue performing for the Debtor without compensation.

242916812.3
237253-10003
- 7 -
Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

DECLARATION OF KYARA MASCOLO

Especially given the Debtor's small workforce, I believe that the continued service by all of the Employees is essential to the Debtor's ongoing operations. The loss of even a single Employee could adversely affect the Debtor's business at this critical juncture. Moreover, I believe the Debtor's business would be severely disrupted were it forced to dedicate time at the inception of the case to address resignations, which I expect will occur if the Debtor fails to timely pay its employees.

33. By the Employee Wage Motion, the Debtor seeks authority to pay approximately $7,000 in prepetition obligations, representing three calendar days of prepetition wage obligations, as well as the authority to continue its wages and benefits programs in the normal course postpetition, and obtain related relief.

### a. Wages

34. The Employees earn wages or salaries, incurred in the ordinary course of the Debtor's business ("**Employee Wage Obligations**"). Employees are paid weekly (52 pay periods per year), generally every Friday. The Debtor pays approximately $11,000 per payroll cycle—inclusive of wages, withholding obligations, and related amounts—on account of all Employees. As of the Petition Date, I understand there are Employee Wage Obligations due to the Employees totaling approximately $7,000 in prepetition wages. No Employees are owed more than $17,150 on an individual basis.

### b. Payroll Deductions and Withholdings

35. In the ordinary course of business, the Debtor is required by law to withhold from its Employees' paychecks (as applicable) (collectively, the "**Employee Deductions**") amounts related to federal, state and local income taxes, the Employees' portion of FICA and unemployment taxes and social security and Medicare taxes. The Debtor forwards amounts equal to the Employee Deductions to the appropriate third-party recipients. I estimate that, as of the Petition Date, the Debtor has withheld $3,400 pertaining to said taxes which are due, but not yet paid to any governmental entity. By the Employee Wage Motion, the Debtor seeks authorization pay the withheld amounts

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

242916812.3
237253-10003

- 8 -

DECLARATION OF KYARA MASCOLO

and to continue to deduct these funds and pay them to such governmental entities in the ordinary course of business.

36. In the ordinary course of processing payroll for the Employees, the Debtor may also withhold certain amounts for various garnishments (such as child support or tax levies) (collectively, the "**Garnishments**"), which have not yet been forwarded to the government agencies or law firms tasked with collecting the funds. To the extent such Garnishments exist, the Debtor seeks authorization to remit such funds in the ordinary course of its business.

### c. Employee Benefits

37. In addition to paying, making and/or honoring the Employee Wage Obligations and the Employee Deductions, the Debtor seeks authority to honor in the ordinary course of business the Employees' accrued paid time off, sick leave, and other leave, if any (collectively, "**Employee Paid Time Off**"). The Employee Paid Time Off totals vary monthly dependent on the Employees and their respective accrual amounts, but I believe they are approximately $11,000 as to the Petition Date. The Debtor seeks authority to honor in the ordinary course of business the Employee Paid Time Off policies for unpaid, but accrued prepetition Employee Paid Time Off.

38. The Debtor also provides Employees with monthly stipends towards payment of their medical insurance premiums, which total approximately $1,000 per month (the "**Benefit Program**"). The Debtor requests permission to continue this Benefit Program in the ordinary course of its business and to honor any outstanding prepetition obligations in connection therewith.

### d. Payroll Processing

39. The Debtor maintains a bank account at Bank of America through which it provides various payroll services to its Employees, including services related to the payment of Employee Wage Obligations and the Benefit Program, and the withholdings of various sums from Employee paychecks for taxes and Garnishments, among other

242916812.3
237253-10003
- 9 -
Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations
DECLARATION OF KYARA MASCOLO

things. The Debtor seeks an order authorizing and directing Bank of America to honor payments related to the various Employee Wage Obligations identified above.

40. The Debtor uses a third party, PayCycle, Inc. d/b/a Intuit, to manage its payroll. Intuit's administrative costs are approximately $85 per month. By the Employee Wage Motion, the Debtor seeks authorization to continue to pay Intuit's administrative fees in the ordinary course of business.

### e. **The relief sought by the Employee Wage Motion is essential.**

41. I believe that it is essential for the morale and maintenance of trust of the Employees that all necessary steps are taken to protect the employment compensation and benefits described above (collectively, the "**Employee Compensation**"), including the Debtor's payment of the Employee Wage Obligations and the honoring of the Employee Deductions, Garnishments, Employee Paid Time Off, and the Benefit Program. The Employees are skilled, familiar with the Debtor's business and operations, and are not easily replaceable in this competitive labor market. I believe that the Employees would not stay with the Debtor if such payments and policies are not made and addressed. Accordingly, if the outstanding Employee Compensation is not immediately honored, I believe the Debtor will experience immediate and irreparable harm to the detriment of all parties in interest. Moreover, failure to pay Employees in the normal course may have a material adverse impact on such individuals' ability to provide for themselves and their respective families. The Debtor has sufficient cash on hand to honor the foregoing Employee Compensation obligations.

42. Accordingly, I respectfully request that the Court grant the Employee Wage Motion.

242916812.3
237253-10003

- 10 -

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

DECLARATION OF KYARA MASCOLO

### B. Cash Management Motion

43. By the Cash Management Motion, the Debtor is seeking authority to maintain its existing Bank Account (defined below) and to maintain its existing Cash Management System (defined below).

#### a. The Debtor's Bank Accounts

44. As of the Petition Date, the Debtor's Cash Management System (as defined below) employed a total of one (1) bank account (the "**Bank Account**"), which is with Bank of America (the "**Bank**"). The Debtor manages its cash receipts, transfers, and disbursements through the Bank Account. In doing so, the Debtor routinely deposits, withdraws and otherwise transfers funds from the Bank Account by various methods such as check, wire, automated clearing house transfer, and electronic funds transfer. The Debtor processes these transactions through the Cash Management System as described below. The Debtor maintains current and accurate records of all transactions processed through the Cash Management System.

#### b. The Debtor's Cash Management System

45. Prior to the Petition Date and in the ordinary course of business, the Debtor utilized a streamlined cash management system using a single Bank Account (the "**Cash Management System**"). Among other benefits, the Cash Management System allows the Debtor to accurately monitor cash availability at all times. It also allows the Debtor to centrally manage and track the collection and transfer of funds, which reduces administrative burden and expense. I do not believe the Bank Account is the subject of a deposit account control agreement.

46. The Debtor's credit card and cash receipts are generally derived from sales transactions generated in the ordinary course of the Debtor's business. Both prior and following the Petition Date, the Debtor's receipts have been and will be primarily collected in the Bank Account. The Debtor collects receipts in the Bank Account and makes all disbursements out of the Bank Account. The Debtor does not utilize a separate account

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

242916812.3
237253-10003

- 11 -

DECLARATION OF KYARA MASCOLO

system. Instead, the Bank Account holds cash until needed for disbursements. The Debtor invests its cash on an as-needed basis depending on the balance of the Bank Account, but will not do so post-petition. I exercise control over the Bank Account.

47. On behalf of the Debtor, I am seeking a waiver of the requirement to establish specific bank accounts for tax payments required under the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "**UST Operating Guidelines**") published by the Office of the United States Trustee for Region 16 (the "**U.S. Trustee**"). I believe that the Debtor's tax obligations can be paid most efficiently pursuant to the existing Cash Management System from the existing Bank Account, that the U.S. Trustee can adequately monitor the flow of funds into and out of the Bank Account through the Debtor's required monthly operating reports, and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.

48. In addition, on behalf of the Debtor, I propose that the Debtor be permitted to use the Bank Account as its debtor-in-possession account and am seeking a waiver of the UST Operating Guidelines' requirement to establish new debtor-in-possession accounts. Instead, we will request that the Bank convert the Bank Account to a debtor-in-possession account. I do not believe that any third party has an interest in the Bank Account. I believe that the Debtor's post-petition obligations can be paid most efficiently through the Bank Account, and that the U.S. Trustee can adequately monitor the flow of funds in and out of the Bank Account through the Debtor's required monthly operating reports. I believe that the creation of new debtor-in-possession accounts would be unnecessary and inefficient and requests authorization to use the Bank Account as the debtor-in-possession account.

49. Subject to a prohibition against honoring prepetition checks, debits, or offsets without specific authorization from this Court, I am requesting that the Debtor be authorized to maintain and continue the use of its Bank Account in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

242916812.3
237253-10003

- 12 -

DECLARATION OF KYARA MASCOLO

period, except that the Debtor will make diligent efforts to change the name of the account title and all document forms to reflect debtor-in-possession status.

      **c.    Maintenance of the existing Cash Management System will benefit the Debtor's Estate.**

50. I believe that the continued use of the Bank Account as part of the Cash Management System will benefit the Debtor's estate because it will allow for the seamless and continuous operation of the Debtor's business and ease the burden on the Debtor's already taxed workforce. I believe the Debtor's continued use of the Bank Account is critical to its ability to operate as normal course as possible—including with respect to timely payment of payroll obligations—and to sharpen its focus on restructuring its operations.

51. I believe the Cash Management System is simple, efficient, and effective. It will be disruptive to the Debtor's ongoing business operations to shut the existing system down and close the Bank Account. Such a disruption would require the Debtor to dedicate its scarce human resources to opening new bank accounts, transferring online accounts with various vendors, and making arrangements to pay vendors from those new accounts – all with no corresponding benefit to creditors. I believe that a drastic shift in the Cash Management System would likely confuse the Debtor's vendors and service providers, disrupt the flow of revenues, and distract the Debtor from ensuring stable day-to-day operations. I believe the resulting effects could cause irreparable harm to the Debtor's operations and its efforts to restructure its financial affairs.

52. Accordingly, I respectfully request that the Court grant the Cash Management Motion.

    **C.    Retention Motion**

53. The Debtor is also seeking, pursuant to Section 327(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, authorization to

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

242916812.3
237253-10003

- 13 -

DECLARATION OF KYARA MASCOLO

employe and retain Loeb as its general bankruptcy counsel effective as of the Petition Date.

54. As the Debtor's bankruptcy counsel, Loeb will, *inter alia*, advise the Debtor with respect to its rights, powers and duties as a debtor and debtor-in-possession in the continued management and operation of its business and assets, take all necessary action to protect and preserve the assets of the Debtor's estate, representing the Debtor at all hearings and proceedings, assisting the Debtor in preparing pleadings and application as may be necessary in furtherance of the Debtor's interests and objections and performing such other legal services as may be required and/or deemed to be in the interests of the Debtor in accordance with its powers and duties as set forth in the Bankruptcy Code.

55. I have authorized the Debtor to retain Loeb as part of the resolution approving this Subchapter V Case filing. I believe that Loeb is well-qualified to serve as Debtor's counsel.

### VIII. The Debtor's Post-Petition Operations and Goals

56. Following the Petition Date, the Debtor intends to continue operating its business, as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

57. The Debtor proposes to pay its employees a total weekly payroll of $11,000 including taxes, benefits and administrative fees.

58. During the pendency of this Subchapter V Case, the Debtor anticipates using the tools set forth in the Bankruptcy Code to reduce liquidate claims against the Debtor and to propose a plan of reorganization that will allow the Debtor to pay its valid debts over time through its disposable income.

//
//
//
//

242916812.3
237253-10003

- 14 -

DECLARATION OF KYARA MASCOLO

1  I declare under penalty of perjury that, to the best of my knowledge and after

2  reasonable inquiry, the foregoing is true and correct.

3  Dated: February 6, 2026

4

5

6  *Kyara Mascolo*
   Kyara Mascolo
7  Manager, Cool Freakin' Genius LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Loeb & Loeb LLP
A Limited Liability Partnership
Including Professional
Corporations

242916812.3
237253-10003

- 15 -

DECLARATION OF KYARA MASCOLO